The Chief Justice
delivered the opinion of the court.
This was an action of ejectment. The general issue was pleaded, and on trial, the defendant having demurred to the evidence produced by the plaintiff in support of the issue on his part, and the plaintiff having joined in the demurrer, the, court below gave judgment for him, from which the defendant has appealed to this court.
It is perfectly clear, that the judgment cannot be sustained. The doctrine is well settled, that to entitle the plaintiff in ejectment to recover, it is necessary for him to prove the defendant to be in possession; of the premises or some part thereof. But in this case, although the evidence adduced on the part of the plaintiff, is stated in the record, yet there is no circumstance which conduces, in the slightest degree, to establish the fact of the defendant’s being in possession. Waiving the consideration, therefore, of any other point, it is evident that for this defect in the proof on the part of the plaintiff, the judgment on the demurrer ought to have been given for the defendant. The judgment must be reversed with cost, and the cause remanded, that judgment may be entered upon the demurrer for the defendant in the court below.
On rendering this decree, the attorney for the appellees filed the following petition for a rehearing:
To the honorable, the judges'of the court of appeals of; *123 Kentucky, the petition of Wüliam Littell, counsel for Garret E. Pandergrast, most respectfully sheweth:—
That in the opinions of this court, in the cases of Pope vs. Pendergrast and Diller vs. Pendergrast, there is error in supposing proof of possession by the defendant, necessary to entitle the plaintiff to recover.
From the view taken of the law by Pendergrast’s coun-i sel, he could not have anticipated an objection of that character at this day.
He was aware that a respectable court in England had once, on a state of facts calculated to produce a momentary confusion of ideas, decided that the plaintiff must prove the tenant to be in possession. He alludes to the case of Smith vs. Mann, reported by Wilson; but he was aware, also, that long subsequent to that decision, a more respectable court had decided, that “if there be but one tenant ^defendant, the plaintiff need not prove him to be in possession.” The substance of these two cases are contained in all our practical books, and the counsel of Pender-grast having seen no case, either in England or America, in which the reason or the authority of the latter case was impugned, having never heard the doctrine contained in it questioned at the bar of any court, had considered it alike indisputable and undisputed, and in each of the present cases, there was but one tenant defendant, and, therefore, they came literally within the rule.
The court will find the substance of both cases in Run-nington on Ejectments, page 292 — 3.
The counsel for Pendergrast does not feel himself called on to support the rationality of the distinction made by the court in the last case. That case exhibited a state of facts, in,which the court could decide according to law, without overruling the former case, and they did so. But had the case of Jesse vs. Bacchus, required the court to directly overrule the case of Smith vs. Mann, the undersigned has the fullest conviction that it would have been done; for, on no principle, either of fact or fiction, can the possession of the defendant be in the smallest degree material, to enable the plaintiff to maintain an action of ejectment. If we take an ejectment to be a genuine instead of a fictitious action, then is it an action of trespass vi et amis brought not because the defendant has put himself into possession of the plaintiff’s farm or house, but because he has put the „u!n;»t5ff ‘ of possession. If the defendant had gone in *124 to the plaintiff’s house, kicked him out, came out immediately after him, and left the possession vacant, yet would the plaintiff’s right of'action be consummated. For, notwithstanding he might have returned into his house with-, out the sanction ¿f a court, he was not hound to do so.
In assigning reasons why compensatory damages are not recoverable in an action Of ejectment, some judges have said, that the ouster never was, at any time, laid with a Continuando. This is not a very happy mode of expression. An ouster is rather the consummated result of a trespass, than an act 6f trespass:. A man once put out of á house, can never be put out again, until he shall regain possession; which, if he does and is again put out of it, is a new ouster and not a continuation of the old one. A declaration in ejectment, laying an ouster with a continu-ando, would be as absurd as an indictment for mayhem, alledging that the prisoner had on a day certain, cut off a man’s hand, and continued to cut it off for the space of tcrg days then next ensuing. '
But if these judges meant, as it is probable they did, that the possession by the defendant, after the ouster of the plaintiff was never laid with a continuando, they were fight, and it may be added that the existence of such possession was never laid, either as a cause of action, or as constituting any part of the cause. The putting out and keeping out the plaintiff' has been, at all times, the sum total of the injury: complained of.' Whether the defendant, after he had.put the plaintiff out of possession, usurped the fossession himself; or whether, like the dog in the fable, e neither enjoyed it himself nor permitted the plaintiff so to do, are facts not to be learned from the declaration in a-hy age or any modification of the action of ejectment.
But when we come to consider on ejectment as it now is, to use the language of Runnington, “a feigned action “brought against a nominal defendant, and generally on a “supposed ouster,” (Run. 438,) the heart as well as the understanding revolts at the doctrine, which would compel the plaintiff to prove that the defendant was in possession. If he was not, in fact, in possession; if he had done no act which the law would construe an ouster, on shewing this to the court, he would never be compelled to enter into the rule: but after having waived this right; after having confessed the ouster; and after having agreed to insist on his title, and his title only, at the trial — on what prin- *125 mpie of reason or morality, shall he be allowed to depart from all these solemn engagements, and instead of insisting on his possessory title and that only on the trial, to insist on his want of both possession and title, and by insisting on that, defeat the plaintiff ? It has been said, with reason and justice, that the confession of lease, entry and ouster, shall not be construed into a confession of any part of the plaintiff’s title. But is it possible, that the defendant’s adverse possession forms a part of the plaintiff’s right of possession, or that the confession of an hostile possession by the defendant, can strengthen the possessory title of the plaintiff? If it cannot, why is the defendant let loose Jfrom his engagement, and why is the plaintiff mocked with the promise of title only, where the title is the only thing not tried, and almost the only thing not intended to be tried?'
The common rule in ejectment, uses the word title in relation to the species of title to be tried, viz: a possessory title; and this is the title which the defendant undertakes to insist on. Actual possession, in contemplation of law, always forms a part of the title of the defendant, and the obvious meaning of the rule is, that he shall insist on it as a title, and shall not defeat the plaintiff by insisting that be has no title. Whereas, according to the doctrine inadvertently espoused by the court, it would be incumbent on the plaintiff to prove the title, both of himself and his adversary,to avoid the penalty of a nonsuit. If it shall be said that the confession shall not be construed so as to make the defendant’s title tvorse, I admit it; but a man’s being in actual possession, never did and never can make his title worse. If it shall be said that the confession admits nothing which will entitle the plaintiff ta recover according to the real merits of his title, I deny it, and appeal, not only to the judicial decisions,, but the moral sentiments, of the last age, in support of the denial. The action of ejectment was then so modelled, as to do justice to both parties, not ensnare or insult either. '
For the defendant, his adverse possession is a material fact, and often conclusive in his favor: for the plaintiff, it can never be, on any principle, a matter perse material. If the defendant could defend without confessing ouster, the adverse possession might be offered in evidence by the plaintiff, as a fact from which the jury might infer ouster, but it would be only prima facie evidence, and as the de *126 fendant cannot plead without confessing ouster, the very fact of which possession would be only presumptive evidence, it is impossible to conceive how, after plea plead, the fact of possession could have any influence on the legal or moral merits of the cause.
An action of ejectment is not intended to try the wrong of the defendant, but the right of the plaintiff-. The rule requires the admission of a wrong, which never did exist, to facilitate the trial of a right, which does exist; just as in feigned issues in England, a wager is feigned which had no existence in fact. That the wrong is never intended to be tried, is evident from the circumstance, that nominal damages only are given. It matters not how valuable the possession may be of which the plaintiff was ousted, how mticjj profit the defendant may have received from them while lpjiis possession, nor what waste or destruction he may have committed on them, a penny, or at the utmost a '¿lulling, is/all that can be received, and as it is impossible that the-plaintiff can derive any benefit in the action, from ^proving th,e defendant in possession, the law has never com-peílealiim to do it; but as it is possible and even probable, that the defendant may derive some benefit from his possession, he is always permitted to prove it.
R has been said, that an ouster is a material fact in an ejectment. That is the wrong which gives the cause of action, unless it is confessed or proved the action will not lie; but when that fact is admitted, there is clearly nothing but title in issue. Lord Mansfield found the question unsettled* whether the plaintiff was not bound to prove ouster, after it had been confessed by the defendant, and he settled it as was usual with him, so as to make the action of ejectment produce justice. In the case of Wigfall vs. Brydon, 3 Bun. a case in which there was no proof of ouster, and in which the proof or admission of it was indispensable, for it wgs the case of one tenant in common against another, his lordship $ays “as there was no proof of “actual ouster, no actual ouster can be supposed. Howe-“vcr, though no actual ouster can be supposed, yet we are “all of opinion, thaf the confession of lease, entry and ous“ter, is sufficient to bar a nonsuit, for want of proof of ac-“tua! ouster. We are glad to have it settled, because there “have been different opinions. The meaning of confessing “lease, entry and ouster, is to bring the matter to the mere “question of the olaintiiPs possessory title.”
*127 It is not possible that the defendant can sustain an injury by the practical operation of these principles. If he is not in possession of the land claimed by the plaintiff, he may take no notice of the suit. Let the judgment be take n by default; and he will not be liable even to the costs of suit; or he may, at his election, go into court, shew these matters in" avoidance of entering into the common rule, and recover his costs. Perhaps under our act of assembly, permitting a defendant to plead as many matters as he thinks proper, he might plead non-tenure in abatement; but be that as it may, no defendant in this country would be in as much danger as defendants are in England. We have a practice grown into a habit, of declaring so specially that a defendant can easily know what land we claim: whereas, the practice in England is to declare so generally that no man can conjecture what land is put in den yet the doctrines contended for have produced there, although they have been practiced on wii senting voice for more than sixty years. But< to form a conjecture of the irijury which muí plaintiffs from so sudden and so material a chan] trines, deemed to have been immovably settled country was reclaimed from a savage state, receivü lawyers, in the infancy of our jurisprudence, and and acted on up to this time, as incontestible legal truths. If indeed the case was as new as it is unquestionably old; if the court were at liberty now to decide according to their own apprehensions of justice or expedience, it is not perceived that any good could result from denying to a man who had been ferociously driven from his habitation, and kept out by terror, the action of ejectment, merely because the wrong doer had not formally invested himáelf with the possession.
No inference can fairly be drawn against the doctrines from the judgment on the writ of habere facias possessio-nem. The possession is in contemplation of law in some one, and as the plaintiff shews that it is not in him, the presumption of law is, that it is in the defendant, until the contrary appear; and this is so far from shewing that proof1 of possession in the defendant is necessary, that it shews it to be altogether superfluous. But farther, the judgment in ejectmesit is so framed that the defendant cannot possibly lose any tiling by it, unless he is in possession. The term yet to come is recovered,' if the defendant is not in posses-" *128 sion, the plaintiff takes it with or without a writ of habe?£ fac¡as possessionem at his election. If the premises recovered are not to be found, the defendant sustains no injury by it: the plaintiff must take possession at his peril. Not so in an action of debt or detinue: in these actions the judgment is substantially against the defendant, and if he is not in possession bf the money or other article received, it is his loss, his misfortune, and not the plaintiff’s.,
In a question so important in its principles and results, it would have been gratifying to the undersigned to have had an opportunity of making á more extensive examina^ tion than the time he has had since the speedy adjournment of the court was announced, has permitted, fte has, however, examined Runnington throughout, and finds nothing on the subject more than he has cited. He has likewise examined the decisions of the supreme court of the United States, and of all the northern states, but discovers no traces of the questions, having ever occurred. He has had no opportunity Of examining the decisions of the middle and Southern states. ⅛
The points relied bn by the undersigned, are briefly as follows:
First. That the adverse possession of the defendant is material to the plaintiff’s cause of action only in furnishing evidence from which the fact of ouster might be inferred; and consequently becomes immaterial the moment that ouster is admitted.
Secondly. If such possession should still be deemed essential, it is either confessed in the confession of ouster, or the law throws the tortious possession on him who commits the ouster, which being a legal result, no proof is required.
Thirdly. That among all the judicial vagaries of all ages and nations, no case has been found where the tenant in possession was sole defendant, in which the court required of the plaintiff any proof of such possession. The case of Smith vs. Mann ^vas a case where the landlord came in, in lieu of the tenant. *
Fourthly. The case of Jesse vs. Bacchus was precisely such a case as the present. There the proof of possession was deemed unnecessary, and the authority of the case does not appear ever to have been questioned by any court or any lawyer, to the present time.
Fifthly. The certain inutility of overturning doctrines sb *129 long established and acquiesced in, and tile probable mis- P»**, thief which may result therefrom.
All which is respectfully submitted.
WM. LITTELL.
It may be added, that no common order can be taken against a defendant in ejectment without a positive affidavit that he is tenant in possession, or an officer’s return equally positive under ourjaw. Hence the presumption is before the confession of ouster, that he is in possession on the same principle, that when a writ is issued against á defendant, with the designation of junior, and the officer returns it executed, it shall be presumed that he executed it on the son and not on the father, and proof will not be required of the plaintiff on a trial of the general issue, that the defendant was actually the junior. Run. 13, 475, &c.
But the court, on consideration, overruled the petition, and ordered the decree to stand affirmed and unaltered.