167 U.S. 204 (1897)
TINDAL
v.
WESLEY.
No. 281.
Supreme Court of United States.
Argued March 25, 1897.
Decided May 10, 1897.
CERTIORARI TO THE COURT OF APPEALS FOR THE FOURTH CIRCUIT.
*205 Mr. William A. Barber for plaintiffs in error. Mr. Samuel W. Melton and Mr. Henry N. Obear were on his brief.
Mr. William H. Lyles for defendant in error. Mr. Robert W. Shand was on his brief.
MR. JUSTICE HARLAN delivered the opinion of the court.
Wesley, a citizen of New York, brought this action in the Circuit Court of the United States against Tindal and Boyles, citizens of South Carolina, to recover the possession of certain real property in the city of Columbia, South Carolina, with damages for withholding such possession, as well as the value of the use and occupation of the premises.
The complaint alleged that on the 16th day of February, 1892, the plaintiff purchased from the commissioners of the sinking fund of South Carolina two certain parcels of land in the city of Columbia in that State, on one of which is a building known as Agricultural Hall  the lots being the same conveyed to the State by deed of J.B. Johnston, dated April 9, 1883, and duly recorded;
That on the day of the purchase, the premises, by the direction and appointment of the plaintiff, were conveyed by the commissioners to J.W. Alexander, to hold the same "in trust for the use of the plaintiff, his heirs and assigns forever, and to permit the plaintiff to have and possess the same and to enjoy the profits, and in trust to convey the same to the plaintiff, his heirs and assigns, or such person as he might direct and appoint";
That upon the request of the plaintiff, J.W. Alexander by deed dated the 11th day of February, 1893, conveyed the premises in fee simple to the plaintiff;
*206 That the plaintiff "being so possessed thereof, the defendants, on the 20th day of February, 1892, wrongfully entered into said premises and ousted the plaintiff, and that the defendants are, and ever since the said 20th day of February, 1892, have been, in possession of said premises and have been and still are withholding the same from the plaintiff, although plaintiff has demanded from the defendants the possession thereof, to the damage of the plaintiff ten thousand dollars"; and
That the value of the use and occupation of the premises was at least twenty-five hundred dollars per annum.
The plaintiff demanded judgment against the defendants for the possession of the premises; for ten thousand dollars, as damages for withholding the same; for the value of the use and occupation of the premises after February 20, 1892, at the rate of twenty-five hundred dollars per annum; and for the costs and disbursements of the action.
The defendant Tindal answered, and for his first defence denied each and every allegation of the complaint. For a second defence he alleged that on the 20th day of February, 1892, he was, and thereafter continued to be, and was at the bringing of this action, the secretary of state of South Carolina; that the premises described in the complaint on the above date were, and thereafter continued to be, and now are, the property of the State, in its possession, and in actual public use; and that he "has no right, title, interest or estate to or in the said premises, of any kind whatever, but that in pursuance of law the same is in the custody of this defendant as said secretary of state."
The defendant Boyles made the same defences as his co-defendant Tindal, and further alleged that he had "no right, title, interest or estate of any kind to or in the said premises, but that by the employment of the said J.E. Tindal as secretary of state, this defendant has been and now is engaged, on behalf of the said State, in watching, guarding and taking care of the said premises."
The jury found for the plaintiff the possession of the land described in the complaint and judgment for such possession *207 was entered in his favor. This was followed by an execution commanding the United States marshal or his deputies to deliver possession of the property to the plaintiff.
That judgment was affirmed by the Circuit Court of Appeals. Tindal v. Wesley, 25 U.S. App. 124. The case is in this court upon writ of certiorari directed to that court.
1. The bill of exceptions shows that W.H. Lyles was a witness on behalf of the plaintiff, and while under cross-examination gave the following testimony:
"Q. You and Mr. Muller went out of the state treasurer's office and almost immediately returned. Now what occurred between the state treasurer on the one hand and Mr. Muller and yourself on the other? A. We returned within five minutes, I think within two minutes. We called the state treasurer's attention to the fact that the bond, which had been delivered by us for Alexander, contained a clause which authorized him to anticipate it at any time, and we told him, on behalf of Mr. Alexander, we desired to pay that bond and mortgage immediately. We then drew out the revenue bond scrip, known as the Blue Ridge Railroad scrip, which we counted out to the amount of a few cents or dollars in excess of the amount due on the bond and mortgage from its date up to the date of this transaction, and we told Dr. Bates we tendered him that in payment of the bond and mortgage. We demanded no receipt, we demanded nothing. Q. And it was refused? A. Yes, the advertisement was not referred to. Q. Was it not the purpose of the transaction to create an issue in the United States court, in order to test the validity of the revenue bond scrip, was not that the object of the purchase? A. The object of the purchase from the beginning was to create an issue as to the validity of the revenue bond scrip, but as to the United States Circuit Court we were not ____ Q. Then when you bought it you did not intend to pay for it in good money? A. We did, and considered the scrip as good money. Q. When you made the purchase, you made it with a view of compelling the State to take the deferred payment of it in revenue bond scrip? A. Yes. *208 Q. Did you happen to know whether the revenue bond scrip had any value in the market? A. I don't know. Q. It has not? A. I don't know that it has. Q. Very little if any? A. Yes. Q. You know Alexander? A. Yes, I have never seen him personally. Q. Do you know him as a poor man? A. Yes. Q. He and Mr. Wesley had no use for this property that you know of except to create the issue to which you have referred? A. That was the sole object for which it was purchased. Mr. Wesley regarded the property as worth the money, and even if he had to pay he would not lose the money. Q. Mr. Wesley holds a large block of revenue bond scrip? A. Yes."
The court excluded this testimony and the defendants duly excepted to its ruling. That ruling is the subject of one of the assignments of error.
It is claimed that the excluded testimony tended to show that Alexander and Wesley intended, from the outset, to make the payment of the deferred instalments of purchase money in "revenue bond scrip, known as Blue Ridge Railroad scrip"; that by the terms of the contract the purchaser was entitled to anticipate the payment of the deferred purchase money; and that as soon as Alexander received the alleged conveyance from the commissioners of the sinking fund he attempted to discharge the bond and mortgage given to secure the unpaid purchase money by tendering in payment "revenue bond scrip." But all this was immaterial under the issue in this case as to the right of possession of the premises. If the legal title passed by a valid deed from the commissioners of the sinking fund then the right of the grantee to possession was not impaired by the circumstance that he intended to insist upon paying the deferred instalments of purchase money in revenue bond scrip. Whether he was entitled to make payment in such scrip was a question to be finally determined when suit was brought to foreclose the mortgage given to secure the payment of the balance of the purchase price. But the possibility or even certainty that such a dispute would arise constituted no reason for refusing possession if the conveyance to Alexander was valid and passed the legal *209 title, without any reservation by the grantors of the right to retain possession until the whole purchase price was paid.
Throughout the argument of counsel for defendants it is assumed that the purpose on the part of both Alexander and Wesley to tender revenue bond scrip in payment of the deferred instalments was, in itself, a fraud that entitled the commissioners of the sinking fund to withhold possession after conveying the legal title. We cannot concur in this view. If under the law of the State the scrip referred to could be used in meeting any obligations due to it, how could it be regarded as a fraud to do what the law allowed to be done? Nor was it, in any legal sense, a fraud for Alexander or Wesley to form the purpose of tendering such scrip in payment in order that there might be a judicial determination of the question of its validity. If the deed had been obtained under assurances that the deferred instalments of purchase price should be paid in money and not in revenue bond scrip, it may be that the commissioners, in a proper proceeding, could have obtained a rescission of the contract. But upon that point it is unnecessary to express an opinion, as no such case is presented by the record. The case here is one in which the excluded testimony does not tend to show anything more than that Alexander and, perhaps, Wesley, did not during the negotiations for the property or before the deed was obtained, disclose to the commissioners their purpose to use revenue bond scrip, if it could be done, in paying the deferred instalments of purchase money.
The plaintiff insists that the question of fraud or no fraud in the alleged purchase from the commissioners of the sinking fund is not a question in which the defendants have any concern, and could only be raised by the State in a proceeding to which it was a party. We need not stop to consider this question, because we are of opinion that in no view of the case arising upon this record was error committed in excluding so much of the testimony of Lyles as is set forth in the bill of exceptions.
2. At the close of the testimony in the Circuit Court the defendants raised the question whether this suit was not, in *210 effect, one against the State, of which the court was prohibited from taking cognizance by the clause of the Constitution declaring that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State." Eleventh Amendment. The Circuit Court held that the suit was not one against the State, and that view was approved by the Circuit Court of Appeals.
It is not claimed, nor could it be claimed, that the commissioners of the sinking fund were without authority to sell the lands in controversy. By an act of the general assembly of the State, approved December 24, 1890, the commissioners were authorized to sell and convey all the right, title and interest of the State (the same being a title in fee simple) in the building in the city of Columbia, with the lot on which it stands, known as Agricultural Hall; and by the General Statutes of South Carolina it was made their duty to sell and convey, for and in behalf of the State, all such real and personal property of the State as was not in actual public use, the sales to be made from time to time, in such manner, and upon such terms, as they may deem most advantageous to the State. Acts of S.C. 1890, 707; Gen. Stat. S.C. 1882, 28, c. 5, § 63; 1 Rev. Stat. S.C. 35, § 85. It is true that by an act approved December 24, 1892, the above act of December 24, 1890, was repealed so far as it authorized and provided for the sale of the lot and building known as Agricultural Hall and the appropriation of the proceeds to Clemson College, and it was provided that if that property had not then been sold and conveyed it should remain unsold, and if sold that the proceeds of sale should be covered into the treasury for the benefit of the State. Acts S.C. 1892, 88. But, as already stated, the sale and conveyance by the commissioners occurred before the passage of the repealing act, and were, therefore, not affected by it.
The parties stipulated that the testimony to be printed in the record should be the evidence given by W.H. Lyles, W.T.C. Bates and J.E. Tindal. But no part of the testimony *211 is made a part of the record by a bill of exceptions, except the above questions and answers in the testimony of Lyles. It must therefore be assumed from the record that the plaintiff prior to the bringing of this action had acquired from the commissioners the legal title to the premises in dispute, and was entitled to possession. The bill of exceptions presents no question as to the genuineness or the execution and delivery of the deed to Alexander conveying the premises in trust for Wesley; and in support of the verdict it must be taken that the conveyance referred to in the complaint as having been made by the commissioners of the sinking fund to Alexander was, in fact, properly executed and delivered to the grantee, and that, as alleged in the complaint, Alexander conveyed to Wesley in 1893.
But it appears from the statutes of South Carolina that the secretary of state has charge of all the property of the State, the care and custody of which is not otherwise provided for by law. Gen. Stat. S.C. 1882, 27, c. 5, § 60; 1 Rev. Stat. S.C. 34, § 82. He admits in his answer that the property in controversy is in his custody. Boyles, under the employment of the secretary of state, watches, guards and takes care of it. They are, therefore, in possession within the meaning of the general rule that ejectment will not lie against a person out of possession. Tyler on Ejectment, 411; Pope v. Pendergrast, 1 A.K. Marsh. 122. The defendants are the actual occupants of the premises. The contention, therefore, of the plaintiffs in error is that the Circuit Court erred in not holding, as it was asked to do, that, they, having no personal interest in the property and being only custodians of it on behalf of the State, a suit to dispossess them and to give possession to the plaintiff was, in effect, a suit against the State.
Of course, it was competent for the defendants to prove that the lots in question belonged to the State, and in that way defeat the present action. So it would have been competent for the State, if it claimed the property, to have intervened, and, submitting to the jurisdiction of the court, to have obtained a judicial determination of the claim asserted for it by the defendants. But it did not intervene. It refused to *212 do so. It appears from South Carolina v. Wesley, 155 U.S. 542, 545, that the State, by its attorney general, suggested to the court that these lands were held, occupied and possessed by the State through and by its officer and agent, and were used for public purposes; and "without submitting the rights of the State to the jurisdiction of the court, but respectfully insisting that the court has no jurisdiction of the subject in controversy," it moved that the proceedings be dismissed. That motion was overruled and a writ of error sued out by the State was dismissed, the Chief Justice observing: "The State does not complain that it was refused leave to intervene, but that the Circuit Court, without the intervention of the State, refused merely upon suggestion to dismiss the complaint against the defendants who were sued as individuals. The State was not a party to the record in the Circuit Court and did not become a party by intervention, pro interesse suo or otherwise, but expressly refused to submit its rights to the jurisdiction of the court. This being so, the motion to dismiss may well be sustained on that ground. United States v. Lee, 106 U.S. 196, 197; Georgia v. Jesup, 106 U.S. 458."
So that the question is directly presented, whether an action brought against individuals to recover the possession of land of which they have actual possession and control, is to be deemed an action against the State within the meaning of the Constitution, simply because those individuals claim to be in rightful possession as officers or agents of the State, and assert title and right of possession in the State. Can the court, in such an action, decline to inquire whether the plaintiff is, in law, entitled to possession, and whether the individual defendants have any right, in law, to withhold possession? And if the court finds, upon due inquiry, that the plaintiff is entitled to possession, and that the assertion by the defendants of right of possession and title in the State is without legal foundation, may it not, as between the plaintiff and the defendants, adjudge that the plaintiff recover possession?
We are of opinion that the principles announced by this court in cases heretofore decided furnish an answer to these questions.
*213 The leading case upon the subject is United States v. Lee, 106 U.S. 196. It is true that the question there presented was whether the suit was one against the United States within the recognized rule that the Government without its consent cannot be sued directly in any court by original process as a defendant. But it cannot be doubted that the question whether a particular suit is one against the State, within the meaning of the Constitution, must depend upon the same principles that determine whether a particular suit is one against the United States.
What was the case of United States v. Lee? By direction of the Executive Department of the Government proceeding, as was supposed, under legislative authority, Kaufman and Strong, as officers and agents of the United States, held possession of certain real estate in Virginia known as Arlington, and constituting a National Cemetery in which were interred the remains of Union soldiers. An action was brought by Lee in a Circuit Court of the United States against Kaufman and Strong to recover possession. The action proceeded upon the ground that the legal title and right of possession were in the plaintiff. The Attorney General of the United States, without submitting the rights of the Government to the jurisdiction of the court, suggested in writing that the property in dispute was held, occupied and possessed by the United States as a military station, through its officers and agents having actual possession for the Government, but without any personal interest in it; and, therefore, that the court had no jurisdiction of the subject of the controversy. Upon these grounds he moved that all further proceedings be stayed and dismissed. The motion was denied. The same question was raised by the answers of Kaufman and Strong. There was a verdict and judgment against the defendants.
Although the result of the trial of that case was to show that the plaintiff had title to the premises, and that what was set up by the defendants on behalf of the United States was no title at all, it was contended that the court could render no judgment against the defendants. That there may be no doubt as to what was determined, we give the language of *214 the court stating the question presented for its consideration: "The case before us is a suit against Strong and Kaufman as individuals, to recover possession of property. The suggestion was made that it was the property of the United States, and that the court, without inquiring into the truth of this suggestion, should proceed no further; and in this case, as in that [United States v. Peters, 5 Cranch, 115], after a judicial inquiry had made it clear that the property belonged to plaintiff and not to the United States, we are still asked to forbid the court below to proceed further, and to reverse and set aside what it has done, and thus refuse to perform the duty of deciding suits properly brought before us by citizens of the United States."
After a full examination of the principles upon which rested the exemption of Government from suit by individuals, and observing that in view of the essential differences between the American and English Governments, in respect of the source and depositaries of power, the decisions of the English courts on this subject were entitled to but little weight, this court, speaking by Mr. Justice Miller, said 
That an "examination of the cases in this court establishes clearly this result: that the proposition that when an individual is sued in regard to property which he holds as officer or agent of the United States, his possession cannot be disturbed when that fact is brought to the attention of the court, has been overruled and denied in every case where it has been necessary to decide it, and that in many others where the record shows that the case as tried below actually and clearly presented that defence, it was neither urged by counsel nor considered by the court here, though, if it had been a good defence, it would have avoided the necessity of a long inquiry into plaintiff's title and of other perplexing questions, and have quickly disposed of the case. And we see no escape from the conclusion that during all this period the court has held the principle to be unsound, and in the class of cases like the present, represented by Wilcox v. Jackson, 13 Pet. 498; Brown v. Huger, 21 How. 305, and Grisar v. McDowell, 6 Wall. 363, it was not thought necessary to reëxamine a proposition *215 so often and so clearly overruled in previous well-considered decisions"; and
That, "conceding that the property in controversy in this case is devoted to a proper public use, and that this has been done by those having authority to establish a cemetery and a fort, the verdict of the jury finds that it is and was the private property of the plaintiff, and was taken without any process of law and without any compensation. Undoubtedly those provisions of the Constitution are of that character which it is intended the courts shall enforce, when cases involving their operation and effect are brought before them. The instances in which the life and liberty of the citizen have been protected by the judicial writ of habeas corpus are too familiar to need citation, and many of these cases, indeed almost all of them, are those in which life or liberty was invaded by persons assuming to act under the authority of the Government. Ex parte Milligan, 4 Wall. 2. If this constitutional provision is a sufficient authority for the court to interfere to rescue a prisoner from the hands of those holding him under the asserted authority of the Government, what reason is there that the same courts shall not give remedy to the citizen whose property has been seized without due process of law, and devoted to public use without just compensation?"
Upon the general proposition that the possession by officers, on behalf of the United States, of property claimed by a citizen, is sufficient of itself to protect those officers against suit by that citizen to recover possession, the court said: "Looking at the question upon principle, and apart from the authority of adjudged cases, we think it still clearer that this branch of the defence cannot be maintained. It seems to be opposed to all the principles upon which the rights of the citizen, when brought in collision with the acts of the Government, must be determined. In such cases there is no safety for the citizen, except in the protection of the judicial tribunals, for rights which have been invaded by the officers of the Government, professing to act in its name. There remains to him but the alternative of resistance, which may amount to crime. The *216 position assumed here is that, however clear his rights, no remedy can be afforded to him when it is seen that his opponent is an officer of the United States, claiming to act under its authority; for, as Mr. Chief Justice Marshall says, to examine whether this authority is rightfully assumed is the exercise of jurisdiction, and must lead to the decision of the merits of the question. The objection of the plaintiffs in error necessarily forbids any inquiry into the truth of the assumption that the parties setting up such authority are lawfully possessed of it; for the argument is that the formal suggestion of the existence of such authority forbids any inquiry into the truth of the suggestion. But why should not the truth of the suggestion and the lawfulness of the authority be made the subject of judicial investigation? In the case supposed, the court has before it a plaintiff capable of suing, a defendant who has no personal exemption from suit, and a cause of action cognizable in the court  a case within the meaning of that term, as employed in the Constitution and defined by the decisions of this court. It is to be presumed in favor of the jurisdiction of the court that the plaintiff may be able to prove the right which he asserts in his declaration. What is that right as established by the verdict of the jury in this case? It is the right to the possession of the homestead of the plaintiff. A right to recover that which has been taken from him by force and violence, and detained by the strong hand. This right being clearly established, we are told that the court can proceed no further, because it appears that certain military officers, acting under the orders of the President, have seized this estate and converted one part of it into a military fort and another into a cemetery." Assuming, upon the record before the court, that the President had no lawful authority to place officers of the Government in possession of the property in question, and that Congress could not give him any such authority except upon making just compensation, the court said: "The defence stands here solely upon the absolute immunity from judicial inquiry of every one who asserts authority from the executive branch of the Government, however clear it may be that the executive possessed no such power. Not only no *217 such power is given, but it is absolutely prohibited, both to the executive and the legislature, to deprive any one of life, liberty or property without due process of law, or to take private property without just compensation. These provisions for the security of the rights of the citizen stand in the Constitution in the same connection and upon the same ground, as they regard his liberty and his property. It cannot be denied that both were intended to be enforced by the judiciary as one of the departments of the Government established by the Constitution. As we have already said, the writ of habeas corpus has been often used to defend the liberty of the citizen, and even his life, against the assertion of unlawful authority on the part of the executive and the legislative branches of the Government. See Ex parte Milligan, 4 Wall. 2; Kilbourn v. Thompson, 103 U.S. 168. No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the Government, from the highest to the lowest, are creatures of the law, and are bound to obey it." Again: "Shall it be said, in the face of all this, and of the acknowledged right of the judiciary to decide in proper cases statutes which have been passed by both branches of Congress and approved by the President to be unconstitutional, that the courts cannot give a remedy when the citizen has been deprived of his property by force, his estate seized and converted to the use of the Government without lawful authority, without process of law and without compensation, because the President has ordered it and his officers are in possession? If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights. It cannot be, then, that when, in a suit between two citizens for the ownership of real estate, one of them has established his right to the possession of the property according to all the forms of judicial procedure, and by the verdict of a jury and the judgment of the court, the wrongful possessor can say successfully to the court, Stop here, I hold by order of the President, and the progress of justice must be stayed. *218 That, though the nature of the controversy is one peculiarly appropriate to the judicial function, though the United States is no party to the suit, though one of the three great branches of the Government to which by the Constitution this duty has been assigned has declared its judgment after a fair trial, the unsuccessful party can interpose an absolute veto upon that judgment by the production of an order of the Secretary of War, which that officer had no more authority to make than the humblest private citizen."
We have made these extracts from the opinion of the court in the Lee case because the reasons there assigned for the conclusion reached control the determination of the present case. If a suit by an individual against individuals to recover the possession of property is not a suit against the United States merely by reason of possession being held by the defendants as agents of the United States and under title asserted to be in the Government, we cannot perceive how the present suit can be regarded as one against the State merely because the defendants assert a right of possession in the State through them as its officers and agents.
The essential principles of the Lee case have not been departed from by this court, but have been recognized and enforced in recent cases.
In Cunningham v. Macon & Brunswick Railroad, 109 U.S. 446, 452, the court, referring to the cases in which an individual, sued for tort committed upon person or property, defends upon the ground that he acted as an officer of the Government, and in which he must show that his authority was sufficient in law to protect him, said: "To this class of cases belongs also the recent case of United States v. Lee, 106 U.S. 196, for the action of ejectment in that case is, in its essential character, an action of trespass, with the power in the court to restore the possession to the plaintiff as part of the judgment. And the defendants, Strong and Kaufman, being sued individually as trespassers, set up their authority as officers of the United States, which this court held to be unlawful, and therefore insufficient as a defence. The judgment in that case did not conclude the United States, as the *219 opinion carefully stated, but held the officers liable as unauthorized trespassers, and turned them out of their unlawful possession."
Stanley v. Schwalby, 147 U.S. 508, 518, was an action of trespass to try title brought in a state court against individuals to recover possession of certain lands. The defendants asserted a right of possession in themselves as officers of the United States which, they alleged, had title and right of possession. Referring to the cases in which an individual was sued in tort for some act injurious to another in regard to person or property, in which the defence was that he acted under the orders of the Government, this court, speaking by the Chief Justice, said: "In these cases he is not sued as an officer of the Government, but as an individual, and the court is not ousted of jurisdiction because he asserts the authority of such officer. To make out that defence he must show that his authority was sufficient in law to protect him. In this class is included United States v. Lee, 106 U.S. 196, where the action of ejectment was held to be in its essential character an action of trespass, with the power in the court to restore the possession to the plaintiff as part of the judgment, and the defendants, Strong and Kaufman, being sued individually as trespassers, set up their authority as officers of the United States, which this court held to be unlawful, and therefore insufficient as a defence." See also Stanley v. Schwalby, 162 U.S. 255, 271; Belknap v. Schild, 161 U.S. 10.
The cases in this court in which it has been necessary to consider the meaning and scope of the Eleventh Amendment are quite numerous. In Pennoyer v. McConnaughy, 140 U.S. 1, 10, the opinion in which case was delivered by Mr. Justice Lamar, the cases previously decided were examined, and were held to belong to two classes. The first class, he said, "is where the suit is brought against the officers of the State, as representing the State's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts"  citing In re Ayres, 123 U.S. 443; Louisiana v. Jumel, 107 U.S. 711; Antoni v. Greenhow, *220 107 U.S. 769; Cunningham v. Macon & Brunswick Railroad, 109 U.S. 446, and Hagood v. Southern, 117 U.S. 52. The other class, the court said, "is where a suit is brought against defendants who, claiming to act as officers of the State, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the State. Such suit, whether brought to recover money or property in the hands of such defendants, unlawfully taken by them in behalf of the State, or for compensation in damages, or, in a proper case where the remedy at law is inadequate, for an injunction to prevent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain, legal duty, purely ministerial  is not, within the meaning of the Eleventh Amendment, an action against the State"  citing Osborn v. United States Bank, 9 Wheat. 738; Davis v. Gray, 16 Wall. 203; Tomlinson v. Branch, 15 Wall. 460; Litchfield v. Webster County, 101 U.S. 773; Allen v. Baltimore & Ohio Railroad, 114 U.S. 311; Board of Liquidation v. McComb, 92 U.S. 531; Poindexter v. Greenhow, 114 U.S. 270.
And in In re Tyler, 149 U.S. 164, 190, the Chief Justice, referring to the review in Pennoyer v. McConnaughy of previous cases, said: "The result was correctly stated to be that where a suit is brought against defendants who claim to act as officers of a State and, under color of an unconstitutional statute, commit acts of wrong and injury to the property of the plaintiff, to recover money or property in their hands unlawfully taken by them in behalf of the State; or, for compensation for damages; or, in a proper case, for an injunction to prevent such wrong and injury; or, for a mandamus in a like case to enforce the performance of a plain, legal duty, purely ministerial; such suit is not, within the meaning of the amendment, an action against the State." In the recent case of Scott v. Donald, 165 U.S. 58, 68, the principle was again announced, Mr. Justice Shiras delivering the opinion, that a suit against individuals, "who claim to act as officers of a State, and, under color of an unconstitutional statute, commit *221 acts of wrong and injury to the property of the plaintiff, to recover money or property in their hands unlawfully taken by them in behalf of the State, or for compensation for damages, is not, within the meaning of the Constitution, an action against the State."
The adjudged cases, in principle, determine the one before us. The settled doctrine of this court wholly precludes the idea that a suit against individuals to recover possession of real property is a suit against the State simply because the defendant holding possession happens to be an officer of the State and asserts that he is lawfully in possession on its behalf. We may repeat here what was said by Chief Justice Marshall, delivering the unanimous judgment of this court in United States v. Peters, 5 Cranch, 115, 139: "It certainly can never be alleged that a mere suggestion of title in a State to property, in possession of an individual, must arrest the proceedings of the court, and prevent their looking into the suggestion, and examining the validity of the title." Whether the one or the other party is entitled in law to possession is a judicial, not an executive or legislative, question. It does not cease to be a judicial question because the defendant claims that the right of possession is in the Government of which he is an officer or agent. The case here is not one in which judgment is asked against the defendants as officers of the State, nor one in which the plaintiff seeks to compel the specific performance by the State of any contract alleged to have been made by it, nor to enforce the discharge by the defendants of any specific duty enjoined by the State. Nor is it one, like Cunningham v. Macon & Brunswick Railroad, above cited, in which the plaintiff seeks to enforce a lien upon real estate in the actual possession of and claimed by the State, where a decree of sale would be fruitless, as no title could be given to the purchaser without the presence of the State as a party to the proceeding. It is a suit against individuals  a case in which the plaintiff seeks merely the possession of certain real estate once belonging to the State, but which the complaint alleges has become his property, and which, according to the verdict of the jury and the judgment of the court thereon must, on this record, *222 be taken to belong absolutely to him. The withholding of such possession by defendants is consequently a wrong, but a wrong which, according to the view of counsel, cannot be remedied if the defendants chose to assert that the State, by them as its agents, is in rightful possession. The doors of the courts of justice are thus closed against one legally entitled to possession, by the mere assertion of the defendants that they are entitled to possession for the State. But the Eleventh Amendment gives no immunity to officers or agents of a State in withholding the property of a citizen without authority of law. And when such officers or agents assert that they are in rightful possession, they must make good that assertion when it is made to appear in a suit against them as individuals that the legal title and right of possession is in the plaintiff. If a suit against officers of a State to enjoin them from enforcing an unconstitutional statute, whereby the plaintiff's property will be injured, or to recover damages for taking under a void statute the property of the citizen, be not one against the State, it is impossible to see how a suit against the same individuals to recover the possession of property belonging to the plaintiff and illegally withheld by the defendants can be deemed a suit against the State. Any other view leads to this result: That if a State, by its officers, acting under a void statute, should seize for public use the property of a citizen, without making or securing just compensation for him, and thus violate the constitutional provision declaring that no State shall deprive any person of property without due process of law, Chicago, Burlington &c. Railroad v. Chicago, 166 U.S. 226, 236, 241, the citizen is remediless so long as the State, by its agents, chooses to hold his property; for, according to the contention of the defendants, if such agents are sued as individuals, wrongfully in possession, they can bring about the dismissal of the suit by simply informing the court of the official character in which they hold the property thus illegally appropriated. It is true that even in such a case the citizen may, if he choose, rely upon the good faith of the State in the matter of compensation. But he is not compelled to part with his property for public use except upon the terms prescribed *223 by the supreme law of the land, namely, upon just compensation made or secured.
It is said that the judgment in this case may conclude the State. Not so. It is a judgment to the effect only that, as between the plaintiff and the defendants, the former is entitled to possession of the property in question, the latter having shown no valid authority to withhold possession from the plaintiff; that the assertion by the defendants of a right to remain in possession is without legal foundation. The State not being a party to the suit, the judgment will not conclude it. Not having submitted its rights to the determination of the court in this case, it will be open to the State to bring any action that may be appropriate to establish and protect whatever claim it has to the premises in dispute. Its claim, if it means to assert one, will thus be brought to the test of the law as administered by tribunals ordained to determine controverted rights of property; and the record in this case will not be evidence against it for any purpose touching the merits of its claim. It was insisted in United States v. Lee, in support of the contention there made, that a judgment in favor of Lee against the persons who, as agents of the United States, held possession of Arlington would be in effect a judgment against the United States. But this court said: "Another consideration is, that since the United States cannot be made a defendant to a suit concerning its property, and no judgment in any suit against an individual who has possession or control of such property can bind or conclude the Government, as is decided by this court in the case of Carr v. United States, 98 U.S. 433, already referred to, the Government is always at liberty, notwithstanding any such judgment, to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights. Hence, taking the present case as an illustration, the United States may proceed by a bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be obtained. Or it may bring an action of ejectment, in which, on a direct issue between the United States as plaintiff and the present plaintiff as defendant, the title of the *224 United States could be judicially determined. Or, if satisfied that its title has been shown to be invalid, and it still desires to use the property, or any part of it, for the purposes to which it is now devoted, it may purchase such property by fair negotiation, or condemn it by a judicial proceeding, in which a just compensation shall be ascertained and paid according to the Constitution." 106 U.S. 222.
We are of opinion that this suit is not one against the State within the meaning of the Eleventh Amendment; and as the record before us shows that the plaintiff owns the premises and is entitled to possession as against the defendants, the judgment must be
Affirmed.