# LA COMPAÑIA DE LOS FERROCARRILES DE PUERTO RICO

*v.*

## KARL ROHRER ET AL.

San Juan, Law, No. 471.

EJECTMENT.

1. By the treaty of Paris all public lands belonging to Spain passed to the United States.
2. Change of sovereignty does not affect vested rights, but the law will not enforce after cession what it could not enforce before.

IV. PORTO RICO—10.

3. If a grant is inchoate at the time of the cession, whatever remains to be done thereafter must be done in accordance with the laws of the new government.

4. A grant which, before the treaty, was discretionary with the Spanish government, and had been refused by it, cannot, after the treaty, be enforced against the United States government.

Instructions delivered May 9, 1908.

---

*Mr. F. H. Dexter,* attorney for plaintiff.   *Mr. Willis Sweet,* of counsel.

*Mr. José R. F. Savage,* United States Attorney, for defendants.

Instructions by RODEY, Judge:

## Statement.

This suit was originally brought against officers of the United States Army and Navy as individuals, to recover a little more than 8½ acres of land within the corporate limits of the municipality of San Juan, which the plaintiff claimed as station grounds.   The plaintiff's right to bring the suit in that way was sustained on demurrer.   See 3 Porto Rico Fed. Rep. 123.

The facts are about as follows:   The plaintiff was originally a French corporation, and, previous to American occupation of Porto Rico, obtained a franchise to build a belt line of railway around the island.   In the original concession obtained from the Spanish authorities it was set forth that the matter of the station grounds in San Juan would be matter for future deter-

La Compañia de los Ferrocarriles v. Rohrer.

mination. Plaintiff, in Spanish days, built a considerable portion of its railroad, and then applied to the local Spanish authorities for station grounds in San Juan. It desired such grounds on high and dry land in the eastern portion of the city, near Fort San Cristobal, but a commission sent out by the local authorities recommended against granting the same at that place, and, instead, proposed that the station be located upon made land, several hundred yards south and west of the place thus refused. This latter location was, at the time, being filled in. Thereafter the plaintiff, during Spanish times, made several efforts to have this made ground conceded to it, without paying anything therefor, but this demand was resisted by the local authorities, and, on appeal to the Spanish authorities in Spain, such refusal was sustained.

At the time of American occupation, the Army and Navy Departments of our government took possession of the ground in question as public property of Spain, which had passed to the United States under the treaty of Paris. A protracted trial in ejectment was had, at the end of which the court instructed the jury to find for the defendants. The reasons for the court's action were set forth at the time by Rodey, Judge, as follows:

At the close of the evidence for the plaintiff, when the attorney for the defendants moved for an instruction, we were not quite satisfied that the same ought to be granted, and hence we required a defense to be made. After the argument since made by counsel for both parties, we think we ought to have sustained the motion at that time; but, in any event, we are certain that we ought to sustain it now.

It is undeniable that, under the treaty of Paris, all public lands theretofore belonging to Spain passed to the United States

La Compañia de los Ferrocarriles v. Rohrer.

at the date of the ratification of that treaty, and that all rights of the Spanish government in and to land belonging to the public domain of Spain at the date of American occupation of the island, or perhaps at the date of the signing of the peace protocol for the cessation of hostilities, and not theretofore disposed of by Spain, became vested in the United States; that is, that all such Spanish rights in the public domain of Porto Rico were covered by the terms of the treaty, because the treaty, at its ratification, undoubtedly related back to the date of completing American occupation, and the ceasing, in the national sense, of Spanish sovereignty in the island.

It is undoubtedly the law that the United States must respect all property rights that existed in the island of Porto Rico previous to the cession to the United States, and that all title which was good before should be good thereafter, and that that which the law would enforce before should be enforceable after the cession; still, we think we also ought to hold with the language of the Attorney General of the United States, when holding to this rule, and quoting from Ely v. United States, 171 U. S. 220–223, 43 L. ed. 142–144, 18 Sup. Ct. Rep. 840, that the converse of this proposition is also true, *viz.:* That what the law would not enforce before the cession, cannot be enforceable as matter of right after the cession. See opinion Attorney General Griggs to the Secretary of War in the matter of claim of Ramon Valdes for concession of right to use water power of Rio Plata in Porto Rico, of July 27, 1899, 22 Ops. Atty. Gen. 548. We also agree with this same opinion of the Attorney General of the United States, that if, at the date of the cession, any substantial act remains to be done, resting in the grace, favor, or discretion of the ceding government, to a right in

La Compañia de los Ferrocarriles v. Rohrer.

public property, such additional action must be taken in accordance with the laws of the new government, and not in accordance with those of the former. We further think that the opinion in question was right when it held that, if such a right had not been completed by the action or assent of the Crown authorities of Spain at the date of the cession, then it is only inchoate, and cannot be added to save by the political department of the new government, which, in the case here, would be the Congress of the United States.

Whilst we may admit that the plaintiff, before American occupation of Porto Rico, obtained a franchise for the construction of a railroad according to Spanish law, still we do not concede that, even under the terms of that concession or franchise, it obtained any definite and final title to the tract of land here sued for, previous to the ceasing of Spanish sovereignty, because the very contrary in fact appears. Nor does the fact, which was tacitly admitted, that plaintiff had a portion of its railroad built and in operation, at least, from San Juan to Arecibo, of itself entitle it to the land sued for.

From the evidence it is, to our mind, unquestionable that the station ground at San Juan was not granted, but excepted out of the original concession for the railroad, to be thereafter determined by mutual agreement, and that the royal decree of December, 1888, approving the refusal of the local insular authorities, on recommendation of the joint commission, to approve the request of the plaintiff railroad company for the lands it first asked for, situated higher up on the dry land of the island, near Fort San Cristobal, for its station, and recommending the location lower down, surrounding and including the land now in controversy, was only a designation of the place where the rail-

La Compañía de los Ferrocarriles v. Rohrer.

road thus received permission to locate its station in accordance with law, on paying for the same, and was in no sense a definite fixing of the said station grounds, or a definite ceding or granting of the property right in the land. This is further made manifest by many exhibits introduced in evidence and by the subsequent royal order or decree of April 13, 1892, wherein the Spanish Crown specifically refused, on petition of this present plaintiff, to give it such lands free.

Spain, whether rightfully or wrongfully, for several years before the ceasing of its sovereignty in Porto Rico, had been denying the claim of this plaintiff for these lands now sued for, and, in the language of the Supreme Court of the United States in Cessna v. United States, 169 U. S. 165, 42 L. ed. 702, 18 Sup. Ct. Rep. 304, "It is the duty of a nation receiving a cession of territory to respect all rights of property as those rights were recognized by the nation making the cession; but it is no part of its duty to right the wrongs which the grantor nation may have theretofore committed upon every individual;" at least, when these are not so recent as to have given no time to seek their redress.

We are not saying that this plaintiff may not have some sort of an equitable claim to present to Congress regarding the land sued for. We are simply holding that no showing has been made here which the court can enforce for plaintiff.

Not only was Spain denying the right of plaintiff to the lands in controversy, but it has been conclusively shown in the defense made here, that the Governor General of the island decided against this plaintiff in that regard, and that, at the date of the changing of sovereignty, an appeal taken by plaintiff was pending from his decision to the higher authorities in Spain.

La Compañia de los Ferrocarriles v. Rohrer.

No showing has been made here as to the result of that appeal. The evidence as to possession of any of the land in controversy at the date of the changing of sovereignty is not satisfactory as having been in the plaintiff here, and, at any rate, such possession would give the plaintiff no right against the United States, which took title to all national property under the treaty; and, of course, the statute of limitations did not, as we understand it, run against the King or Sovereign under Spanish law any more than it does under our law; and, at best, the time was too short for it to have had title effect.

We are inclined to think as to this claim, that the plaintiff here is not in nearly as good a position with reference to our government as was the Manila Railway Company in the matter of its request that the United States government pay certain interest on its railway in the Philippines, granted by the former Spanish government. See Magoon on the law of Civil Government under Military Occupation, pp. 177 et seq., where it was held (although we are not advised whether that ruling remains unaltered) that that railway company simply had a personal promise, as it were, of the Spanish government, and had no just claim against the government of the United States under the treaty, and the inference was left that, in any event, if the claim was a just one, the application for its satisfaction should be made to the political department of the government. This, also, as stated, is, we think, the remedy of plaintiff here if it has any remedy.

It must be remembered that this is a plain suit in ejectment against these defendants, who are officers of the United States government, and who testified that they have no personal interest in the matter, and are holding the possession of the land

by order of, and for and on behalf of, the United States of America. In such a case, a plaintiff recovers on the strength of his own title, and not on the weakness of that of his adversary.

It will thus be seen that, while this sort of a suit can be maintained (see Tindal v. Wesley, 167 U. S. 204, 42 L. ed. 137, 17 Sup. Ct. Rep. 770, and citations), and the plaintiff can recover as against the particular officers if it shows complete title in itself, the United States thereafter being driven to its remedy of filing a bill to enjoin the execution, and to quiet its own title, as it is not bound by the judgment in this suit, or to acquire the title, if it requires the land, by proper expropriation proceedings or otherwise, still we are of opinion that, especially since defendants have put in their defense here, it is manifest that the Spanish government absolutely denied the title of these plaintiffs to the land in controversy at all times, for lack of their paying for the lands in the mode they were given permission to pay for them by the royal decree of April 13, 1892.

Therefore, plaintiffs, in our opinion, not having shown, by the strength of their own title, their right to recover here, as against these defendants or the United States, the motion of the defendants to instruct the jury to find a verdict for them will be granted, and it is so ordered.