PUBLISH

**UNITED STATES COURT OF APPEALS**

Filed 8/27/96

**TENTH CIRCUIT**

---

JERI GARRAMONE, individually and
Jeri Garramone as guardian and next
friend of JUDY GARRAMONE, a
minor,

        Plaintiff - Appellee,

   v.

CARLA ROMO, GEORGIA
SANCHEZ, CHARLENE WATSON,
PETE ADOLPH, CINDY CLARK,
RICHARD GRISCOMB, ANGELA
ADAMS, RICHARD HEIM,

        Defendants - Appellants,

  and

MICHAEL J. CAPLAN, JUDY
JONES,

        Defendants.

No. 95-2092

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CIV 94-176)**

---

Paula I. Forney, Legal Bureau/RMD, State of New Mexico, Santa Fe, New
Mexico, appearing for the Appellants.

Jonathan E. Zorn (Chris Lackmann with him on the briefs), Albuquerque, New

Mexico, appearing for the Appellees.

Before SEYMOUR, Chief Judge, TACHA and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Jeri Garramone temporarily lost custody of her daughter as a result of a New Mexico civil neglect proceeding. After regaining custody, Garramone brought this suit under 42 U.S.C. §§ 1983 and 1985, alleging that employees of the New Mexico Human Services Department ("HSD") and an attorney retained by HSD wrongfully prosecuted her for neglect and obtained custody of her daughter in violation of her federal constitutional and statutory rights. The district court either dismissed or granted summary judgment in favor of the defendants on all claims except for the claims for prospective relief against all the HSD defendants in their official capacities and two of the claims against HSD defendants Carla Romo and Georgia Sanchez in their individual capacities. We exercise jurisdiction under 28 U.S.C. § 1291 to reverse in part and affirm in part.

**Background**

Jeri Garramone resided in Grants, New Mexico, with her two children, Judy (age 14) and David (age 10), and her husband and the children's stepfather, Anthony Garramone. Jeri Garramone was a reservist in the United States Army,

- 2 -

and in November 1990 the Army called her reserve unit to active duty and sent her to Saudi Arabia to serve in Operation Desert Shield-Desert Storm. When Garramone was sent overseas, she entrusted her children to the care of their stepfather, Anthony.

On February 18, 1991, while Garramone was still overseas, Anthony sexually abused Judy. Judy and her brother David immediately reported the incident to the Grants Police Department, and the police arrested Anthony and referred the case to HSD. HSD assigned the case to defendant Carmela Romo. Defendant Georgia Sanchez, Romo's immediate supervisor, performed administrative and investigative functions in the case. On February 20, 1991, HSD initiated civil abuse and neglect proceedings and petitioned for temporary physical and legal custody of Judy and David. The state court granted the petition by ex parte order the following day and scheduled a hearing within ten days to address continued custody. The two children were temporarily placed in a foster home.

Romo contacted Garramone on February 21 and notified her that Anthony had sexually abused Judy. On February 24, Garramone arrived in Grants on a thirty-day emergency leave from military duty. She soon discovered that Romo considered her, as well as her husband, to be at fault in failing to provide Judy with proper parental care. Garramone told Romo that she had arranged for her

parents in Indiana to take custody of the children until she permanently returned from active duty.  HSD agreed to this arrangement on the condition that Garramone sign a stipulated judgment finding her guilty of neglect, which she signed prior to the ten-day hearing.

During her thirty-day emergency leave, Garramone attended two state court hearings: a combined custody and neglect hearing on February 28, 1991, and a disposition hearing on March 8, 1991.  She was not represented by counsel at either hearing, and alleges that neither the state court nor any HSD representative advised her of her right to counsel or offered to appoint counsel.  At the conclusion of the disposition hearing,  HSD maintained both physical and legal custody over Judy, but allowed both children to reside with Garramone's parents.

Garramone returned to active military duty until June 4, 1991.  The Army reassigned her to Fort Carson, Colorado, and thus she never returned to the Persian Gulf, moving instead to Colorado where, at some point, she reunited with Anthony.  The New Mexico state court conducted further hearings on the neglect case and granted Garramone physical custody of Judy on September 10, 1991.  Almost two years later, in May of 1993, HSD dismissed the case and returned legal custody of Judy to Garramone.  In sum, HSD deprived Garramone of physical custody of her daughter for about six months and legal custody for about twenty-six months.

On February 18, 1994, Garramone and her daughter filed suit under 42 U.S.C §§ 1983 and 1985 alleging that Michael Caplan, an attorney hired by HSD as an independent contractor, and numerous HSD employees violated their rights under the First, Fourth, and Fourteenth Amendments to the Constitution, the Soldiers' and Sailors' Civil Relief Act of 1940 ("SSCRA"), 50 U.S.C. §§ 520(3) & 521, and the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-628 & 670-679a. Caplan filed a motion to dismiss for lack of subject matter jurisdiction, and the HSD defendants filed a motion to dismiss that the court later converted into a motion for summary judgment.

The district court dismissed all claims against Caplan on grounds of absolute immunity. The court granted summary judgment on all claims as to all HSD defendants in their individual capacities on the basis of qualified immunity, with the exception of the claims against Romo and Sanchez for alleged violations of Garramone's right to procedural due process and rights under the SSCRA. The court also granted summary judgment in favor of all HSD defendants in their official capacities on all claims for monetary relief on the basis of Eleventh Amendment immunity, but denied summary judgment to those defendants on all claims for prospective relief. Defendants now appeal, arguing that the district court erred in (1) finding that defendants Romo and Sanchez were not entitled to qualified immunity with regard to the procedural due process and SSCRA claims,

(2) failing to dismiss the claims for prospective relief against the HSD defendants in their official capacities, and (3) failing to apply res judicata or collateral estoppel to the claims.

**Discussion**

We begin by evaluating Romo's and Sanchez's contention that they are entitled to qualified immunity on Garramone's procedural due process and SSCRA claims. We analyze assertions of qualified immunity under a two-part framework: first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that her conduct violated the right. Shinault v. Cleveland County Bd. of County Comm'rs, 82 F.3d 367, 370 (10th Cir. 1996); see Siegert v. Gilley, 500 U.S. 226, 231 (1991). Garramone asserts that Romo and Sanchez violated her right of procedural due process by failing to inform her that she had a right to counsel. The Constitution guarantees a right to counsel only in certain situations. In both criminal and civil cases, for example, litigants have a presumed right to counsel when they could lose their physical liberty if they lose the litigation. See Scott v. Illinois, 440 U.S. 367, 373-74 (1979) (criminal defendant has Sixth Amendment and Fourteenth Amendment right to appointed counsel where she

faces actual imprisonment if convicted); Vitek v. Jones, 445 U.S. 480, 496-97 (1980) (inmate subject to involuntary administrative transfer to a mental hospital has a Fourteenth Amendment right to representation by either an attorney or qualified independent layperson).

In proceedings where litigants are not directly threatened by a loss of physical liberty, a presumption arises against their right to appointed counsel. Lassiter v. Department of Social Servs., 452 U.S. 18, 26-27 (1981). Nonetheless, when another liberty interest is threatened, courts determine on a case-by-case basis whether the requirements of due process overcome this presumption. See id. at 27. The neglect proceeding in this case interfered with Garramone's constitutionally protected interest in familial association. Stanley v. Illinois, 405 U.S. 645, 650-52 (1972). In determining whether the requirements of due process warrant the right to counsel, we balance the "fundamental fairness" factors outlined in Mathews v. Eldridge, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

See Lassiter, 452 U.S. at 26-33. Thus, we analyze the application of these factors to this case to determine whether they overcome the presumption against the right

to counsel.

The private interest affected in this case, a parent's maintenance of custody of her child, "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley, 405 U.S. at 651; accord Lassiter, 452 U.S. at 27. Garramone's interest is further heightened by the fact that the neglect proceedings accused her of conduct that could have exposed her to future criminal proceedings. Lassiter, 452 U.S. at 27 n.3, 31. Compare N.M. Stat. Ann. § 30-6-1(A)(2) with N.M. Stat. Ann. § 32A-4-2(C)(2) (containing virtually identical definitions of "neglect").

The risk that Garramone would be erroneously deprived of custody of her children in the absence of counsel was high. Garramone was charged with neglect, presumably on the theory that she had left her children with her spouse and thereby enabled the stepfather to sexually abuse Judy. There is no evidence, however, that Garramone knew that Anthony presented a threat to her children. As soon as she heard of the abuse, Garramone returned from her post in Saudi Arabia and arranged to have her parents take care of her children. The defendants, however, allegedly threatened to place both children in foster care unless Garramone signed a judgment stipulating that she neglected her children. Had Garramone received legal counsel at the hearings, she may well have defended herself rather than consent to a judgment of neglect that resulted in loss

of physical and legal custody of her daughter.

Finally, the government's interest in the neglect proceeding would have been better served by ensuring that Garramone was represented by counsel. The government shares Garramone's interest in accurate and just findings affecting the custody of her children. Lassiter, 452 U.S. at 27-28. That interest is served by providing the parent with adequate representation:

> If, as our adversary system presupposes, accurate and just results are most likely to be obtained through equal contests of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal.

Id. at 28. While the government may have incurred some fiscal burdens had Garramone received appointed counsel, those burdens are not particularly high. See id. Thus, after balancing all the factors, we conclude that, under the constitutional guarantee of procedural due process, Garramone had a right to counsel at the February 28 and March 8 state court hearings.

Even though Garramone had a right to counsel, we must answer the additional question whether Romo and Sanchez had an obligation to inform her of that right. See Martinez v. Mafchir, 35 F.3d 1486, 1493 (10th Cir. 1994). This determination turns on whether state law required them to inform Garramone of her right. See id. at 1492-93. New Mexico Children's Court Rule 10-302 provides:

> Within twenty-four (24) hours . . . from the time the child is taken into custody, <u>the person taking the child into physical custody</u> shall give notice to the parents, guardian or custodian of the child that: . . . (4) if they are the respondents, they have a right to an attorney, and if they cannot afford an attorney, one will be appointed to represent them free of charge.

(Emphasis added). Because the HSD defendants took the children into custody, they had the responsibility to inform Garramone, as parent and respondent, of her right to counsel. See State v. Perlman, 635 P.2d 588, 590 (N.M. Ct. App. 1981). Thus, we agree with the district court that Garramone has asserted a violation of a constitutional right by defendants Romo and Sanchez.

We must now determine whether Garramone's right to counsel was clearly established. In order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Although the action in question does not have to have been previously held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." Id. This ordinarily means that there must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

As noted above, in proceedings where litigants are not directly threatened with a loss of physical liberty, the presumption is against a due process right to

counsel. That presumption is only overcome in the rare case, such as this one, where the balance of various factors of fundamental fairness weighs heavily in favor of the litigant. The <u>Lassiter</u> Court explained the circumstances that might give rise to such a right in these terms:

> If, in a given case, the parent's interests were at their strongest, the State's interest were at their weakest, and the risks of error were at their peak, it could not be said that the <u>Eldridge</u> factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel.

452 U.S. at 31. This is hardly the language of a clearly established right. Furthermore, because the parent's interest in retaining custody must always be balanced against the state's interest in the health and welfare of the children, it is difficult, if not impossible, for state officials to know that they have violated clearly established law. <u>Frazier v. Bailey</u>, 957 F.2d 920, 931 (1st Cir. 1992). We hold that Garramone's right to counsel under the Due Process Clause was not clearly established, and thus Romo and Sanchez are entitled to qualified immunity on that claim.

Garramone also asserts that Romo and Sanchez violated her rights under the SSCRA. The purpose of the SSCRA is to assist soldiers whose ability to conduct their defense in civil cases is materially affected by reason of military service. It provides two protections that are relevant in this case. First, the SSCRA allows the court to appoint an attorney to the soldier:

In any action or proceeding in which a person in military service is a party if such party does not personally appear therein or is not represented by an authorized attorney, the court may appoint an attorney to represent him . . . .

50 U.S.C. § 520(3). Second, the SSCRA allows the court to grant a temporary stay of proceedings:

At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act . . . , unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.

50 U.S.C. § 521. Garramone maintains that these provisions afforded her a right to appointed counsel and a temporary stay of proceedings, and asserts that Romo and Sanchez violated those rights by failing to inform her of her right to counsel and neglecting to arrange a stay of proceedings.

The defendants argue that Garramone must first prove that clearly established authority holds that the SSCRA provides a private cause of action. The proper inquiry, however, is whether the SSCRA creates clearly established rights that were <u>violated</u> by the defendants--section 1983 may provide the <u>cause of action</u> for the alleged violation of those rights. We note here that the defendants do not dispute the district court's conclusion that the SSCRA contains rights enforceable under § 1983, but instead argue that Garramone has failed to

assert a violation of those rights.

The provisions of the SSCRA neither mandate that a particular right be afforded to Garramone nor specify that Romo and Sanchez were obligated to preserve whatever right existed. Section 520(3) allows the court, in its discretion, to appoint an attorney; its failure to do so does not amount to a violation of Garramone's rights. Moreover, there is no statutory basis for concluding that Romo and Sanchez should have either informed Garramone of this provision of the SSCRA or requested that an attorney be appointed for her. Section 521 allows a court to stay proceedings on its own motion, and requires a court to stay proceedings on motion of the party, if the party's defense would be materially affected by her military service. Because there is no evidence in the record that Garramone requested a stay, the court was under no obligation to stay the proceedings. Further, like § 520(3), nothing in § 521 imposes any obligation on Romo and Sanchez. We conclude that Garramone has failed to assert a violation of her rights under the SSCRA by Romo and Sanchez, and therefore hold that Romo and Sanchez are entitled to qualified immunity on this claim as well.

The defendants' second contention on appeal is that the district court erred in denying their motion to dismiss the claims for prospective relief on the basis of Eleventh Amendment immunity. A district court's denial of Eleventh Amendment immunity, like its denial of qualified immunity, is immediately appealable as a

final judgment under the collateral order doctrine. Williams v. Kentucky, 24 F.3d 1526, 1543 (6th Cir.), cert. denied, 115 S. Ct. 358 (1994); see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 113 S. Ct. 684, 689 (1993). While the Eleventh Amendment bars actions for monetary damages to be paid by the state, Edelman v. Jordan, 415 U.S. 651, 677 (1974), it does not bar claims against state officers for prospective relief, Ex parte Young, 209 U.S. 123, 159-60 (1908). Thus, the district court correctly denied defendants' motion to dismiss those claims.

Defendants' final contention is that the district court erred in holding that res judicata or collateral estoppel do not apply to the claims against them in their official capacities. This decision of the district court, however, is not an appealable final order. While we may exercise pendent appellate jurisdiction over this issue, we may do so only if the district court's decision on the issue was "inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions, or . . . review of the former decision was necessary to ensure meaningful review of the latter." Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1212 (1995). The district court's determination that res judicata and collateral estoppel do not preclude this action has no relationship to its decision to deny immunity to the defendants, and thus we cannot review this claim on appeal.

We therefore REVERSE the district court's ruling on qualified immunity for defendants Romo and Sanchez, AFFIRM the court's ruling on Eleventh Amendment immunity, and REMAND for proceedings consistent with this opinion.