UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ELEPHANT BUTTE IRRIGATION DISTRICT OF
NEW MEXICO; EL PASO COUNTY WATER
IMPROVEMENT, District No. 1 of Texas,

    Plaintiffs-Appellees,

v.

DEPARTMENT OF THE INTERIOR; MANUEL
LUJAN, Secretary of the Interior; DENNIS
UNDERWOOD, Commissioner of Reclamation,

    Defendants,

and

ANITA LOCKWOOD, Secretary of the State of New
Mexico; GARY JOHNSON, Governor of the State of
New Mexico,

    Defendants-Appellants.

No. 97-2188

ORDER

Filed November 25, 1998

Before BRORBY, McWILLIAMS and HENRY, Circuit Judges.

This matter is before the court on plaintiff-appellee's motion to add counsel's

name to the court's published opinion filed on November 6, 1998. The motion is

granted. Attached to this order is a revised cover page for the opinion reflecting the

name of James M. Speer, Jr., counsel for plaintiff-appellee, El Paso County Water

Improvement District No. 1.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:
     Keith Nelson
     Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**NOV 6 1998**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELEPHANT BUTTE IRRIGATION DISTRICT OF
NEW MEXICO; EL PASO COUNTY WATER
IMPROVEMENT, District No. 1 of Texas,

    Plaintiffs-Appellees,

v.

DEPARTMENT OF THE INTERIOR; MANUEL
LUJAN, Secretary of the Interior; DENNIS
UNDERWOOD, Commissioner of Reclamation,

    Defendants,

and

ANITA LOCKWOOD, Secretary of the State of New
Mexico; GARY JOHNSON, Governor of the State of
New Mexico,

    Defendants-Appellants.

No. 97-2188

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-90-95-HB)**

---

Herman E. Ortiz (Lee E. Peters, Hubert & Hernandez, P.A., Las Cruces, New
Mexico, and James M. Speer, Jr., Attorney at Law, El Paso, Texas, with him on
the brief) of Hubert & Hernandez, P.A., Las Cruces, New Mexico, for Plaintiffs-
Appellees.

Christopher D. Coppin (Tom Udall, Attorney General, and Marilyn S. Hebert,
Special Assistant Attorney General, Santa Fe, New Mexico, with him on the
briefs), Assistant Attorney General, Albuquerque, New Mexico, for Defendants-

Appellants.

Before **BRORBY, McWILLIAMS** and **HENRY**, Circuit Judges.

**BRORBY**, Circuit Judge.

## Introduction

This case involves Eleventh Amendment state sovereign immunity and the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), as applied to state officials accused of a continuing violation of federal law. Plaintiffs, Elephant Butte Irrigation District of New Mexico and El Paso County Water Improvement District (collectively "Irrigation and Improvement Districts") accuse the United States Department of the Interior and its Secretary (collectively "Federal Defendants"), the State of New Mexico, and certain state officials of illegally retaining net profits under a recreational land lease with the United States. Plaintiffs allege a portion of the net profit from the lease belongs to them under federal land reclamation laws that supersede and antedate the lease between the United States and New Mexico. Citing the general immunity provisions of the Eleventh Amendment and the doctrine of *Ex parte Young*, the district court dismissed New Mexico and the New Mexico Department of Energy, Minerals and

Natural Resources but refused to dismiss Governor Gary Carruthers [1] and

Secretary of the New Mexico Energy, Minerals and Natural Resources

Department, Anita Lockwood (collectively "state officials").  The district court

also ruled Plaintiffs are entitled to their lawful share of net profits, and has

ordered a hearing to reform the offending lease provision to properly reflect the

division of profits under federal law.


The state officials appeal solely on the basis of the district court's refusal

to dismiss them based on Eleventh Amendment immunity.  We affirm.


## I.  Background

Although we review only the district court's decision not to dismiss the

state officials pursuant to the Eleventh Amendment and express no opinion as to

the merits of the underlying controversy, *see Idaho v. Coeur d'Alene Tribe*, 521

U.S. 261, ___, 117 S. Ct. 2028, 2043 (1997) (stating the question before the Court

"[was] not the merit of either party's claim, ... but the relation between the

sovereign [interest] at issue and the immunity the State asserts"), in order to

determine whether federal jurisdiction is appropriate under the exception to

---

[1] Gary Johnson is the current Governor of New Mexico, Gary Carruthers
was the Governor at the time this case was filed.

Eleventh Amendment state immunity found in *Ex parte Young*, we must examine "the essential nature and effect of the proceeding, as it appears in the entire record." *In re State of New York*, 256 U.S. 490, 500 (1921) (applicability of *Ex parte Young* "is to be determined not by the mere names of the titular parties"). Therefore, we proceed with an examination of the facts.

This quarrel over profits involving Federal Defendants, the state officers of New Mexico and the Irrigation and Improvement Districts stems from a complex series of land management statutes and land use contracts arising over the course of the past century. The controversy begins with the Reclamation Act of 1902, 32 Stat. 388, as amended and compiled, 43 U.S.C. §§ 372 *et. seq*., which authorized the construction of the Rio Grande Project ("the Project"). The Project was a reclamation effort authorizing the construction of water projects under repayment contracts with various irrigation districts to supply water for growing crops on arid and semi-arid lands in the southwestern United States. Both Plaintiffs control water projects within the Rio Grande Project area. [2] They are responsible for operating and maintaining irrigation systems for their respective portions of

---

[2] The Elephant Butte Irrigation District is a quasi-municipal corporation organized and operating under New Mexico law, while El Paso County Water Improvement District is a Texas public corporation.

the Project area, and cooperating with the United States under federal reclamation law.

In 1937, the United States entered into a contract with the irrigation district and the predecessor in interest to the improvement district to sell Plaintiffs' right to use and develop stored water on the Project lands for the purposes of hydroelectric power generation. In return for the sale of these power privileges, the Irrigation and Improvement Districts received, among other things, the benefits accorded under Subsection I of the Fact Finders Act of 1924, 43 U.S.C. § 501. The primary benefit under this provision is the right to credit for accumulated net profits derived from various uses of the Rio Grande Project lands. [3]

---

[3] The Fact Finders Act of 1924, 43 U.S.C. § 501, provides in relevant part:

> Whenever the water users take over the care, operation, and maintenance of a project, or a division of a project, the *total accumulated net profits*, as determined by the Secretary, derived from the operation of project power plants, leasing of project grazing and farm lands, and the sale or use of town sites *shall be credited to the construction charge of the project*, or a division thereof, and thereafter the net profits from such sources may be used by the water users to be credited annually ....

(Emphasis added.)

The potential for conflict over these profits did not arise until many years later, when Congress enacted Pub. L. No. 87-542, 76 Stat. 171 (1962). This statute authorized the establishment and administration of "basic [public] recreation facilities at the Elephant Butte and Caballo Reservoirs" and allowed the Federal Defendants to enter into a lease agreement with the State of New Mexico for the "administration, operation, and maintenance" of the public recreation facilities. *Id.* at §§ 1, 3. Pursuant to this statute, Federal Defendants entered into two separate lease agreements with New Mexico, one in 1964 and the other in 1973. Under these lease agreements, Federal Defendants assigned to New Mexico the right to revenues generated from the leased premises. The leases covered grazing and farm lands of the Rio Grande Project, from which the Project had historically received credit for net profits. This assignment of profits from the Project lands to New Mexico contravened the prior appropriation of net profits to the Irrigation and Improvement Districts under prior agreements codified in federal law, thus giving rise to the present controversy.

Plaintiffs' standing to claim credit for net profits as a third-party beneficiary of the lease between New Mexico and the United States did not begin until 1979 and 1981, when the Irrigation and Improvement Districts each took control of their respective portions of the Project area encompassing Elephant

-6-

Butte Reservoir and Caballo Reservoir.  However, Plaintiffs did not file their lawsuit until 1990, well beyond the six-year statute of limitations for federal claims.  *See* 28 U.S.C. §2401(a) (1994). The district court allowed the suit to proceed under the "continuing claim" doctrine. [4]

The Irrigation and Improvement Districts seek to vindicate their rights under federal law as third-party beneficiaries of the lease agreement between the United States and New Mexico.  The majority of Plaintiffs' complaint seeks relief only from the named Federal Defendants; however, Count II of the amended complaint is also directed at the state and state officials as co-defendants. Plaintiffs request, *inter alia* , "an order declaring the lease agreement with the State of New Mexico void as an ultra vires act and as unconscionable or, alternatively, for reformation of the lease contract in equity to require prospective compliance with Federal Law by providing revenues to the Project beneficiaries." Even though Plaintiffs' primary dispute is with the United States for the alleged violation of Subsection I of the Fact Finders Act, Plaintiffs included the state

---

[4] Under the continuing-claim doctrine, where the party is to make periodic payments, "each successive failure to make proper payment gives rise to a new claim upon which suit can be brought," even when the grounds for refusing to pay occurred more than six years before.  *Friedman v. United States* , 310 F.2d 381, 385 (Ct. Cl.), *cert. denied* , 373 U.S. 932 (1962) .

defendants so that all the parties necessary to reform the contested lease provision were before the court.

The district court granted Plaintiffs' motion for summary judgment as to Count II (B) of the complaint, and determined the Irrigation and Improvement Districts are entitled to have the lease between the Federal Defendants and the State of New Mexico reformed to reflect their preeminent right to profits from categorical uses of the recreation area lands. New Mexico moved to dismiss the suit based on state sovereign immunity under the Eleventh Amendment. The district court granted the motion to dismiss, but only as to the State of New Mexico, not the state officials. The district court ruled the state officials were committing an ongoing violation of federal law and thus their conduct fell squarely within the *Ex parte Young* exception to the general rule of Eleventh Amendment state immunity.

## II. Discussion

A. Jurisdiction

This court has jurisdiction to hear this interlocutory appeal under the collateral order doctrine of *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993). *See also Garramone v. Romo*, 94 F.3d 1446,

-8-

1452 (10th Cir. 1996) (allowing an interlocutory appeal from the denial of claim of Eleventh Amendment sovereign immunity under the collateral order doctrine). We review *de novo* a district court's consideration of subject-matter jurisdiction in the context of a Fed. R. Civ. P. 12(b)(1) motion to dismiss based on Eleventh Amendment immunity. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1186 (10th Cir. 1998).

B.  The Eleventh Amendment and *Ex parte Young* – An Overview

The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state. *See Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890). This concept of state sovereign immunity is based on the traditional notion that a state should not be "'amenable to the suit of an individual without its consent.'" *Hans*, 134 U.S. at 13 (1890) (quoting The Federalist, No. 81 (A. Hamilton)). There are, however, two clearly recognized exceptions to the general immunity protections of the Eleventh Amendment: (1) a state may consent to be sued, or (2) Congress may clearly and expressly abrogate the states' immunity. *See ANR Pipeline*, 150 F.3d at 1187. Neither exception is applicable to the present appeal. [5] So, we turn our attention to the third judicially

_____

[5]  The fact the state appeared and contested this case in the proceedings below does not indicate consent to suit under the Eleventh Amendment. *See Florida v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n.18 (1982); *Edelman v.*

created alternative for avoiding the general application of state sovereign immunity – the *Ex parte Young* doctrine.

The *Ex parte Young* doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state. Generally, the law considers state officials acting in their official capacities to be acting on behalf of the state and immune from unconsented lawsuits under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. ... It is not a suit against the official personally, for the real party in interest is the entity."); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). However, *Ex parte Young* creates a narrow exception to this general rule. In *Ex parte Young*, the Supreme Court held the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune. *Ex parte Young*, 209 U.S. 123, 159-60 (1908) The Court "recognize[d]

---

*Jordan* 415 U.S. 651, 678 (1974) ("[t]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar" that it may be raised at any point during the proceedings).

-10-

that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct." *Coeur d'Alene Tribe*, 521 U.S. at ___, 117 S. Ct. at 2043 (1997) (O'Connor, J., concurring). For years, the Supreme Court has applied *Ex parte Young* to allow suits for prospective relief against a state officer to enjoin future violations of federal law, but it has consistently prohibited any retroactive or compensatory relief. *Edelman*, 415 U.S. at 666-68 (relief that includes retroactive payments, even if brought against a state official, is actually a suit against the state and barred by the Eleventh Amendment).

The general doctrine from *Ex parte Young* allows expanded federal jurisdiction over state action, and gives the federal courts a powerful tool for ensuring state compliance with federal laws. However, the decision whether to apply *Ex parte Young* and allow a suit to proceed in federal court is often less than clear, and case law in this area reveals the difficulty of drawing principled distinctions on the facts of different cases. Courts struggle to find a compromise between vindicating the supremacy of federal law and upholding the immunity of the states under the Eleventh Amendment. This is especially true when, as in the case before us, the controversy involves not simply a violation of federal law, but

-11-

relief impacting the validity of an asserted state property interest. [6]

The struggle to define the limits of the *Ex parte Young* doctrine is evident from recent Supreme Court precedent. In *Coeur d'Alene Tribe*, the Supreme Court barred federal jurisdiction over claims for purely prospective relief against

---

[6] Many of the cases cited by both parties illustrate how state property interests impact whether the court chooses to exercise jurisdiction over state officials. *Compare Treasure Salvors,* 458 U.S. at 697 (Court agreed that where state has a colorable claim to a possessory interest in property, absent the state's consent, the federal district court had no power to adjudicate the state's interest in the property), *and Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459 (1945) (barring federal jurisdiction over taxpayer's suit against state officials to recover gross income taxes paid because the suit was in reality an action against the state and required the payment from the state treasury) and *ANR Pipeline*, 150 F.3d at 1193 (applying *Coeur d'Alene Tribe* to deny federal jurisdiction finding that the state had a "special and fundamental interest" in maintaining authority over its power to assess and levy property taxes), *with Ex parte Young*, 209 U.S. 123 (allowing suit to proceed in federal court to address prevention of unconstitutional state conduct, but the case did not substantially involve state property interests), *and Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477 (10th Cir. 1995) (allowed federal jurisdiction, but this case involved a request to enjoin a state's continuing violation of provisions of a federal environmental law and did not principally involve a state property interest), *and Johns v. Stewart* 57 F.3d 1544 (10th Cir. 1995) (Court held the Eleventh Amendment did not bar the portion of the Plaintiffs' complaint seeking prospective relief preventing an ongoing violation of federal law, but no state property interest was implicated. Although the suit required the state to distribute monies under the Social Security Act, the state did not have a property interest in the benefit payments. The state was merely overseeing a federal program.).

-12-

a state official to compel compliance with federal law. [7] *Coeur d'Alene Tribe* involved a suit by an Indian Tribe against Idaho's state officials to establish the Tribe's ownership rights to submerged lands within the boundaries of a reservation established under federal law in 1873. 521 U.S. at ___, 117 S. Ct. at 2032. The Court held that even when a suit is commenced against state officials, and "the [plaintiff] has alleged an on-going violation of its property rights in contravention of federal law and seeks prospective injunctive relief," that is not enough to invoke the *Ex parte Young* doctrine if the suit over property interests is the "*functional equivalent* of a quiet title action which implicates special sovereignty interests." *Id*. at 2040 (emphasis added). The Court found "the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake," and that to "interpret *Young* to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief

_____

[7] *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), decided in the term just before *Coeur d'Alene*, also denied federal jurisdiction under *Ex parte Young*, even in the face of an alleged violation of federal law, in cases where Congress has already "prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." *Id*. at 74. Although the case is instructive regarding the new limits placed on the *Ex parte Young* doctrine and the trend toward narrowing its scope, the central holding of *Seminole Tribe* has little relevance to this present appeal. In the case before us, no alternative, Congressionally mandated statute limits or prevents federal jurisdiction in this matter, so Plaintiffs are not automatically precluded from bringing the suit in federal court against the state officials .

-13-

is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle ... that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Id*. at 2034. The Court suggested that if the relief requested involved the adjudication of property interests (like a quiet title action) that "implicate[] special sovereignty interests" and is coupled with far-reaching and invasive relief, the *Ex parte Young* doctrine is inapplicable, and the state should be allowed to respond to the claims against it in its own courts. *Id*. at 2040, 2043.

*Coeur d'Alene Tribe* imposes an important new requirement on us. We must examine whether the relief Plaintiffs seek against the state officials "implicates special sovereignty interests," and "whether that requested relief is the functional equivalent to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment." *ANR Pipeline*, 150 F.3d at 1190. Accordingly, we add this latest pronouncement to the traditional three-part inquiry articulated in *Treasure Salvors*, 458 U.S. 670, to establish a framework for determining whether a suit against a state official is barred under the Eleventh Amendment. First, we must determine whether this is an action against the state officials or against the State of New Mexico itself; second, whether the alleged

-14-

conduct of the state officials constitutes a violation of federal law, or merely a tortious interference with Plaintiffs' property rights; third, whether the relief Plaintiffs seek is permissible prospective relief or is it analogous to a retroactive award of damages impacting the state treasury; *Treasure Salvors*, 458 U.S. at 690, and finally, whether the suit rises to the level of implicating "special sovereignty interests." *ANR Pipeline*, 150 F.3d at 1193 (internal citation omitted).

C. Application

(1) Is this a proper suit against state officials?

The state officials argue the State of New Mexico is the real party in interest because the lease the district court intends to reform was entered into between the United States and an agency of the State of New Mexico. They also argue all of their conduct with regard to the lease and the disputed profits was authorized, official state action, thus immunizing them under the state's Eleventh Amendment protection. Even though these allegations would appear to immunize the state officials, these arguments fail to understand the *Ex parte Young* exception. Because the states cannot authorize any act that violates federal law, the Supreme Court has established that an action seeking to prospectively enjoin a state official's ongoing violation of federal law is not barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 102 ("a suit challenging the

-15-

constitutionality of a state official's action is not one against the State"). Even though the state officials claim to act under the authority of valid state law, if their conduct is not in accord with federal law the state cannot cloak their actions with state authority or state immunity. *Ex parte Young*, 209 U.S. at 160.

In the present case, the state officials were acting pursuant to state law authorizing the development of recreation areas under the lease agreement with the United States. *See* N.M. Stat. Ann. §§ 16-2-11(A) & (J), 16-2-12, 16-2-13 (Michie 1978) (state law authorizing, *inter alia*, the state to acquire lands or interests in lands in the name of the state, for state park purposes, subject to legislative approval). However, because the lease agreement allegedly conflicted with federal law at its inception, the state officials' acts of signing the lease and subsequently accepting benefits under the assignment provision may constitute an ongoing violation of federal law. Accordingly, Plaintiffs' claims are properly brought against the state officials, not the state. The state is not the real party in interest because the state cannot "authorize" the officials to violate federal law. *See Ex parte Young*, 209 U.S. at 159-60 (holding that when a state official seeks to enforce a state legislative enactment that is void because unconstitutional, the state officer comes into conflict with the supremacy of the federal law and enjoys

-16-

no immunity). [8]

(2) Violation of federal law or tortious interference with property rights

As a general rule, if the state officials' conduct was authorized by state law, and no federal rights were infringed, then the alleged violation of Plaintiffs' rights is merely tortious interference and the Eleventh Amendment bars federal jurisdiction. *Larson v. Domestic & Foreign Commerce, Corp* ., 337 U.S. 682, 693 (1949). Although this rule from *Larson* appears to require us to ascertain whether state officials actually violated federal law, in fact we do not need to dispositively decide this question. The Supreme Court has ruled we need only determine whether Plaintiffs state a non-frivolous, substantial claim for relief against the state officials that does not merely allege a violation of federal law "solely for the purpose of obtaining jurisdiction." *Larson*, 337 U.S. at 690 n.10 (1949); *see also Tindal v. Wesley*, 167 U.S. 204, 216 (1897) ("It is to be presumed in favor of the jurisdiction of the court that the plaintiff may be able to prove the right which he

---

[8] We also note that even though the State of New Mexico itself was named but subsequently dismissed from the suit, its dismissal does not mean the state officials are also automatically discharged. The suit is properly brought against the state officials, even in the absence of the State of New Mexico. "Neither the fact that the State elected to defend on behalf of its agents, nor the fact that the District Court purported to adjudicate the rights of the State, deprive[] the federal court of jurisdiction that had been properly invoked over other parties." *Treasure Salvors*, 458 U.S. at 691-92.

asserts in his declaration."). Even "[t]he possibility that a defendant will ultimately prevail on the merits does not clothe that defendant in Eleventh Amendment immunity." *Coeur d'Alene Tribe v. Idaho*, 42 F.3d 1244, 1251 (9th Cir. 1994), *cert. denied*, 517 U.S. 1133 (1996), and *rev'd on other grounds*, 117 S. Ct. 2028 (1997).

Plaintiffs' complaint seeks prospective equitable relief to enjoin the state officials from committing continuing violations of federal law. The Irrigation and Improvement Districts claim the lease between the United States and New Mexico contains an assignment clause that violates existing federal law, and as parties to the lease and knowing recipients of the illegal benefits under the assignment provision, the state officials are committing an ongoing violation of federal law. State officials, on the other hand, argue they are not violating federal law and cannot violate the terms of Subsection I of the Fact Finders Act, upon which Plaintiffs base their claims to credit for profits. We find the state officials' argument unpersuasive. The factual record indicates the United States assigned the right to profits from the operation, maintenance and development of a recreation area on Project lands to the State of New Mexico under the 1964 and 1973 leases. New Mexico has continued to retain the profits, if any, from use of the recreation areas over the term of the lease. This arrangement arguably

-18-

contravenes prior agreements and statutory provisions that provide Plaintiffs with the preeminent right to a portion of the profits. We have, in this instance, a lease between the State of New Mexico and the United States that conflicts with existing federal law. The district court could find federal law was violated both at the inception of the lease and each time the state retained profits that ought to have been credited to the Irrigation and Improvement Districts. Simply because a federal law, like the Fact Finders Act, specifically imposes affirmative obligations on the federal government, does not mean state action cannot also violate that law. Such a conclusion would lead to absurd results and undermine the supremacy of federal law. If the state action aids, encourages, cooperates with, or accepts the benefits of a federal governmental violation of federal law, we believe the state is also potentially culpable. [9] That is precisely the situation we have in this case. New Mexico is purportedly enjoying the benefits the federal government unlawfully assigned to them. Accordingly, without deciding the

---

[9] Government contracts must comply with statutory laws and regulations. The state officials, on behalf of the State of New Mexico, entered a lease (contract) with the United States that violated Subsection I of the Fact Finders Act. Accordingly, the state officials are on "direct notice," constructive or otherwise, that the lease is "plainly illegal." *Total Med. Management, Inc. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997). This at the very least raises a substantial issue as to whether the state officials' acceptance of the disputed profits while participating in the development of the recreation areas under the lease agreements is an ongoing violation of federal law.

merits of their claims, we hold Plaintiffs have made an adequate, substantial, and non-frivolous allegation that the state officials are committing violations of federal law, not merely a tortious interference with Plaintiffs' property rights. Plaintiffs' claim is sufficient to support federal jurisdiction, assuming the other requirements for the application of the *Ex parte Young* doctrine are met.

(3) Is the relief sought permissible prospective relief?

Plaintiffs argue the relief they request will have no effect on the state treasury of New Mexico because they seek only prospective compliance with federal law. However, the prospective/retrospective analysis is often not as simple as it appears. In many instances, even prospective relief will burden the state's treasury to some degree. *Edelman*, 415 U.S. at 668. The "overriding question" is not whether the relief will require the payment of state funds, but whether the relief will "remedy future rather than past wrongs." *Coeur d'Alene Tribe,* 42 F.3d at 1252 ("An injunction that will in practical effect require payment of funds out of the state treasury is nonetheless permissible if it requires only that officials conform their future actions to federal law." (Internal citation omitted.)).

Even though the request for relief against the state officials in this case

-20-

will affect New Mexico's interest in profits under the assignment clause of the lease, the relief will have no retrospective effect. The relief Plaintiffs seek will only affect the state's right to future revenues. While this may cause difficulties for New Mexico and require additional expenditures from the state's coffers in order to effectively operate and maintain the affected recreation areas, it does not transform Plaintiffs' claim into an impermissible request for retrospective relief or damages.

The state officials also argue the *Ex parte Young* doctrine does not allow the courts to interfere with their discretionary acts. Although this general premise is sound, *Ex parte Young* does not extend this rule to preclude judicial review of discretionary acts that violate federal law. *See* 209 U.S. at 158-59 (holding the state officials' "general discretion regarding the enforcement of the laws ... is not interfered with by an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment, to the injury of the complainant."). In the present case, it is true the law will not permit the courts to force New Mexico officials into negotiating changes in lease agreements, but it certainly permits the courts to vindicate federal rights. Plaintiffs have sufficiently alleged a federal violation, and we will not deny jurisdiction solely on the basis that a ruling might indirectly impact state officials'

discretionary acts.

Even if Plaintiffs meet all the traditional requirements for the application of the *Ex parte Young* doctrine we have discussed above, that does not *automatically* allow the suit to proceed in federal court. The rule from *Coeur d'Alene Tribe* requires a more thorough investigation into the nature of the claim, the state's interest and the potential effect of the requested relief in order to determine what sovereign interests the court's decision might affect and whether federal jurisdiction is appropriate.

(4) Are special sovereign interests at stake?

After *Coeur d'Alene*, if we determine the relief Plaintiffs seek, although prospective and not tantamount to a damages award, is an excessive intrusion into an area of special state sovereign interest, *Ex Parte Young* does not apply, and the the Eleventh Amendment bars the suit. *Coeur d'Alene Tribe*, 521 U.S. at ___, 117 S. Ct. at 2043. However, if the relief involves enjoining a continuing violation of federal law that would have only an incidental effect on special state sovereign interests, then federal jurisdiction is proper under the traditional approach to *Ex Parte Young*.

The fundamental difficulty with the present suit in terms of the sovereign interests at stake, is that in addition to involving a possible continuing violation of federal law, it also has a direct bearing on the validity of New Mexico's claim to profits under the lease. The district court is primarily adjudicating the validity of the state's asserted property interest, even if the court decides the illegality of the assignment provision voided any state property interest from the inception of the lease. Any decision and remedy in this matter at the very least affects the validity of the state's asserted property interest in the revenues and poses a challenge to its current position with regard to the recreation area lands. Thus, we find ourselves in virtually the same dilemma the Ninth Circuit articulated in its *Coeur d'Alene Tribe* opinion. We are constrained by two general principles: (1) "federal courts may not hear actions to quiet title to property in which the state claims an interest, without the state's consent," and (2) "declaratory and injunctive relief against state officials to foreclose future violations of federal law is available even if that relief works to put the plaintiff in possession of property also claimed by the state." 42 F.3d at 1252 (9th Cir. 1994) (internal citation omitted). Admittedly, the district court is not "quieting title" to the state's real property in this case, but it is determining the validity of a property interest – New Mexico's claim to profits under the lease. *Id.* We struggle to find a principled means of distinguishing the real property interest at stake in *Coeur*

-23-

*d'Alene Tribe* with New Mexico's asserted right to income under the assignment provision of the lease in the present case. Both the State of Idaho's interest in submerged lands in *Coeur d'Alene Tribe*, and New Mexico's interest in profits from the recreation areas, although qualitatively different, fall under the general heading of "state property."

It is easy to understand how a majority of the Justices in *Coeur d'Alene Tribe* could decide that the Tribe's suit to divest the State of Idaho of all authority and ownership over submerged lands was actually a suit against the state. 521 U.S. at ___, 117 S. Ct. at 2047 (O'Connor, J. concurring). However, it is more difficult to say whether the Court intended its ruling to extend to every situation where a state property interest is at issue. We believe the holding of *Coeur d'Alene Tribe* does not extend that far, but instead reflects the extreme and unusual case in which, although the doctrine of *Ex parte Young* under traditional principles is applicable, the suit is prohibited because it involves "particular and special circumstances," *id*. at 2043, that affect "special sovereignty interests" and cause "offense to [the state's] sovereign authority," *id*. at 2040.

In this light, we examine whether the property interest rises to the level of a "special sovereignty interest," *ANR Pipeline*, 150 F.3d at 1193 (internal citation

omitted).  After looking at the complete record before us, we decide that although the relief accorded to Plaintiffs will affect the State of New Mexico's future interest in profits under the recreational land lease, either through reformation of the lease or some other form of equitable relief, this impact on state interests does not rise to the level of implicating special sovereignty interests.  We rest our decision on a variety of factors we find implicit in the Supreme Court's ruling in *Coeur d'Alene Tribe* and our recent application of its holding in *ANR Pipeline*.  First, we cannot say the relief the Irrigation and Improvement Districts request is as far-reaching or intrusive as that sought in *Coeur d'Alene Tribe* and *ANR Pipeline*.  The State of Idaho's interest in its submerged lands in *Coeur d'Alene Tribe*, and the State of Kansas' interest in its property tax scheme in *ANR Pipeline* present state sovereign interests to a degree not attained by New Mexico's claims in the present case.  Second, the remedy in this case only presents the possibility of a readjustment of priorities for the distribution of profits from certain uses of Project lands, not an impermissible affront to New Mexico's political authority.  Our decision to allow this suit in federal court will have minimal effect on the sovereignty and autonomy of the State of New Mexico.  Finally, the balance of New Mexico's interest and the federal rights and interests at stake in this matter swings decidedly in favor of federal jurisdiction.  *See Papasan v. Alain*, 478 U.S. 265, 277 (1986) (recognizing certain types of cases formally meet the

requirements of *Ex parte Young*, but "stretch that case too far and would upset the balance of federal and state interests"). The interest of vindicating the federal rights and answering the federal questions involved substantially outweigh the state's sovereign interests. *See id.* These considerations, coupled with the traditional analysis supporting the application of the *Ex parte Young* doctrine persuade us the relief Plaintiffs seek does not impermissibly intrude upon the state's "dignity and status" as a sovereign government. *ANR Pipeline*, 150 F.3d at 1194.

## IV. Summary & Disposition

Since the state property interest at stake in this proceeding does not rise to the level of a "special sovereign interest," nor is this suit the "functional equivalent" of an action against the state "implicat[ing] special sovereignty interests," the Eleventh Amendment is not a bar to federal jurisdiction over the state officials. *Coeur d'Alene Tribe*, 521 U.S. at ___, 117 S. Ct. at 2040. Accordingly, we **AFFIRM** the decision of the district court.